**Colombo A. SPAGNUOLO, Plaintiff,**

v.

**WHIRLPOOL CORPORATION,
Defendant.**

No. C–C–78–107–M.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Sept. 27, 1982.

Samuel M. Millette and Ernest S. DeLaney, III, DeLaney, Millette, DeArmon & McKnight, P.A., Charlotte, N. C., for plaintiff.

Joan McAvinn Gale, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## ORDER

McMILLAN, District Judge.

Colombo A. Spagnuolo filed this suit on March 31, 1978, alleging that, because of his age, defendant Whirlpool had wrongfully demoted him from his position as Builder Sales Manager of Whirlpool's Charlotte Sales Division, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* The case was tried in this court before a jury for four days in October of 1979, and resulted in a verdict and judgment in favor of the plaintiff for $51,977.00 for loss of earnings, plus liquidated damages in the amount of $51,977.00, plus other relief including reinstatement, costs and attorneys' fees. The case was appealed to the Fourth Circuit Court of Appeals which, in an opinion of February 26, 1981, with one minor exception, affirmed this court's decision. 641 F.2d 1109.

Defendant sought a re-hearing *en banc* by the Fourth Circuit Court of Appeals, which was denied. Defendant then sought *certiorari* from the Supreme Court of the United States, which was opposed by plaintiff and was denied on October 5, 1981.

After the case found its way back to this court, defendant, pursuant to a December 10, 1981, partial consent decree, paid the amounts of liquidated damages, actual damages, post-judgment interest, and attorneys' fees and costs specified in the original judgment.

However, defendant has never offered to reinstate plaintiff, and has failed to make other substantial payments and arrangements required by orders of the court.

The orders challenged by defendant, despite the final affirmance on appeal, are:

Paragraph 3 of the judgment of December 11, 1979:

"3. That the defendant shall reinstate the plaintiff as Builder Sales Manager of the Charlotte Sales Division of the defendant or as the combined Builder/Heating and Cooling Sales Manager of the Charlotte Sales Division of the defendant, or in a position of equal stature, compensation, future prospects and responsibility."

Paragraph 4 of the judgment of December 11, 1979:

"4. That from the time of the verdict of the jury until the plaintiff is reinstated, the defendant shall pay the plaintiff the same salary, benefits and emoluments, including increases and bonuses, as have been or are being and will be paid to other managers of the Builder Department or other joint managers of the Builder/Heating and Cooling Department with no less seniority than the plaintiff—reduced, however, by what plaintiff is able to earn in other activity."

Defendant also challenges the following provisions of the order of May 10, 1982 (entered following the appeal and affirmance of the district court order):

2. Beginning 10 days from the date of this Order, and thereafter at the end of

each month beginning in May and ending December 31, 1982, or until such time as plaintiff is reinstated by defendant, defendant shall pay to plaintiff the sum of Two Thousand Six Hundred Forty-Three Dollars ($2,643.00), less appropriate withholdings for state and federal income tax only, representing the difference between the monthly base salary of the incumbent Builder/Heating and Cooling Sales Manager at defendant's Charlotte Sales Branch and plaintiff's monthly earnings at his present job. Said sum shall be paid jointly to plaintiff and his attorneys and shall be mailed to plaintiff's attorneys on or before the 3rd day of each succeeding month.

On June 22, 1982, defendant filed a "MOTION FOR RELIEF" from the decree of reinstatement and the order requiring monthly payments. That motion is an unverified writing by Whirlpool's attorneys, which asserted:

¶ 4: That plaintiff has received the required payments covering January 1 through May 31, 1982.

¶ 6: That by letter of June 10, 1982, defendant had offered plaintiff "reinstatement" to the job of National Account Manager/Manufactured Housing, Charlotte, North Carolina.

¶ 7: That this job is a position of at least "equal stature, compensation, future prospects and responsibilities" to the job of Builder/Heating and Cooling Sales Manager at defendant's Charlotte Sales Branch. The job of Builder Sales Manager, Charlotte Sales Branch, no longer exists."

¶ 8: That by making this offer, defendant has satisfied its obligations and would pay the plaintiff through June 28, 1982 [and, by implication, no further].

Defendant, in this unverified motion requests an order of the court that defendant be relieved of all further liability under the court's orders and that payment through June 28, 1982, will completely fulfill defendant's obligations.

In a response filed June 23, 1982, plaintiff asserts that the alleged offer of reinstatement complies with neither the spirit nor the letter of the court's judgment, and that the job tendered is not comparable to Spagnuolo's old job in either "stature, compensation, future prospects, and responsibility," and that defendant has not compensated the plaintiff for numerous other losses as required by the December 17, 1981 and the May 10, 1982 orders of this court.

The court, by order of June 25, 1982, recited the above information, noted that defendant's motion was not verified, and directed the defendant to continue the payments as directed, without exercising self-help to relieve itself of its obligations. Discovery was also authorized.

A hearing was conducted on August 23, 1982, principally on affidavit, to determine any remaining matters at issue. At the time of the hearing, the defendant had paid the attorneys' fees and liquidated damages specifically ordered, and had paid the plaintiff's lost wages up to a short time before the hearing, but had not reinstated plaintiff, and had made no payment of the sizeable other losses in the form of life insurance, retirement insurance, disability income benefits, medical services, vacation benefits and trips, and other items which, up to June 25, 1982, plaintiff claims exceed $29,000.00.

Moreover, defendant at the hearing announced an intention to cut off the monthly payments of continuing lost wages, upon the assertion that it had offered to the defendant a job of "stature, compensation, future prospects and responsibility" at least equal to the job of Builder/Heating and Cooling Sales manager at defendant's Charlotte sales branch." The job of Builder Sales Manager, Charlotte sales branch, says defendant, "no longer exists."

The questions before the court include the following:

1. Whether defendant has offered plaintiff a job of "stature, compensation, future prospects and responsibility" equal to the job which he held up to January 4, 1978.

2. If not, what further relief for plaintiff, in the form of reinstatement and recovery of lost wages, is appropriate.

3. What, if anything, plaintiff is entitled to recover as compensation for other losses, including:

    (a) Lost retirement and pension benefits;

    (b) Lost life and disability insurance benefits;

    (c) Lost medical, health and accident insurance benefits;

    (d) Lost vacation benefits;

    (e) Lost trips with customers; and

    (f) Lost yearly medical examination.

4. What additional attorneys' fees plaintiff is entitled to recover.

The principal question is the question of reinstatement.

The job the plaintiff had was a regional supervisory job with headquarters in Charlotte. As Builder Sales Manager he supervised five other salesmen (the number of salesmen in the present job is about ten) and was a part of the management of the sales and distribution of Whirlpool products in the states of North Carolina and South Carolina. He traveled, almost exclusively in the two Carolinas, twenty to twenty-five percent of his time. His territory and customers were familiar. During one period under his management his department accounted for something like two-thirds of the profits that Whirlpool made in its national operation. He was an officer in the Charlotte Home Builders' Association and was active in the home builders' associations of both North Carolina and South Carolina. He was eligible for the "Brintnall" award, which was given annually to the best sales manager in Whirlpool's entire nationwide operation; plaintiff had won that award on two occasions. He was eligible for other such awards.

Defendant offers to make plaintiff a "National Account Manager" for Manufactured Housing. In this position plaintiff would call upon the headquarters of builders of manufactured housing in the hope of developing a new market for Whirlpool products. (Whirlpool re-entered the Manufactured Housing market about two years ago after a period during which it had sold no products directly to the industry because it was unable to do so profitably.) Plaintiff would be required to spend about seventy-five percent of his time traveling all over the country to call on customers directly. As National Account Manager he would supervise no one and would not even have a secretary of his own. The prospects for future advancement in this position are uncertain; unlike Builder Sales Managers, no National Account Manager has ever been promoted.

In terms of compensation, the "salary points" and the approximate level of promised earnings in the two jobs in question are about the same. However, Sales Managers have opportunities to win bonuses and prizes and to take desirable trips which are not available in the job that has been offered. These items have substantial financial value.

In the new job, plaintiff would be removed entirely from his old friends and customers and would have to break new trails among untried and hitherto unsold potential customers. Also, his transfer at age 59 from a supervisor's job in this community to a traveling salesman's job all over the country would have the obvious effect of making him a living demonstration of the penalties suffered by one who tangles with Whirlpool management, even when plaintiff is so obviously right, as a twelve-person jury long ago found him to be.

In summary of the above, and all the other evidence which may not be mentioned above, the job proposed by defendant would:

    (a) Banish plaintiff from his lifelong home and put him on the road for the rest of his employment days;

    (b) De-grade him from a supervisory position into the role of a traveling salesman, pure and simple;

    (c) Require him to travel three-fourths or so of his time instead of one-fifth to one-fourth of his time as formerly;

    (d) Separate plaintiff from his old friends and customers and start him hammering on strange doors in strange lands,

dealing with strange people, carrying out a strange selling program which has yet to be substantially tested; and

(e) Remove him from the opportunity for desirable vacation trips and competition for cash prizes and bonuses of substantial amounts, and from the opportunities to attend conventions and make trips with customers which were part of his job heretofore.

I am unable to conclude that the offered job comes close to being "equal" within the meaning of the December 11, 1979 judgment.

■ Defendant has argued that even if the reinstatement offer does not satisfy the court's original order, plaintiff must accept the proffered job as a means of mitigating the substantial damages that have accrued. Defendant's Memorandum of Law on Contested Issues at 5–6. Defendant recognizes, however, that "a discrimination victim may refuse to accept other employment that is . . . essentially different from that in which he was previously employed." *Id.* at 4, citing *Brown v. Colman-Cocker Co.,* 16 FEP Cases 1046, 1051 (W.D.N.C.1975).

■ As discussed above, the offered position of national traveling salesman is, in the judgment of the court, "essentially different" from plaintiff's old job of regional supervisor and common law principles of mitigation therefore do not require that plaintiff accept the offer of reinstatement. *See Florence Printing Co. v. N.L.R.B.,* 376 F.2d 216 (4th Cir.), *cert. denied,* 389 U.S. 840, 88 S.Ct. 68, 19 L.Ed.2d 104 (1967).

This conclusion is in no way altered by the Supreme Court's recent discussion of the statutory duty to minimize damages under Title VII of the Civil Rights Act of 1964, 78 Stat. 261, as amended 42 U.S.C. § 2000e–5(g). *Ford Motor Co. v. EEOC,* ── U.S. ──, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). In that case the Equal Employment Opportunity Commission sued Ford alleging that it had violated Title VII by refusing to hire women at its Charlotte parts warehouse. Before the action had commenced, Ford had offered two claim-

ants, and they had refused, the positions they had previously been denied. The Court held that an employer tolls the accrual of back pay liability by unconditionally offering a Title VII claimant the job he or she originally sought. (The real issue in the case was whether such an offer must also include seniority retroactive to the date of the alleged discrimination. Over a vigorous dissent, the Court held that such a requirement would disserve the goals of Title VII.)

The ruling in *Ford* simply has no bearing on this case, where in the five years since Whirlpool demoted plaintiff they have failed to offer him his original job or one substantially equivalent to it.

Plaintiff, of course, remains under a continuing obligation to mitigate his losses but there is no evidence before the court to show that he has not satisfied this obligation by seeking and maintaining his present employment. *See Cline v. Roadway Express, Inc.,* 689 F.2d 481, 488–489 and n. 8 (4th Cir. 1982) (burden of showing failure to mitigate is on the employer).

Defendant cites *Patterson v. American Tobacco Co.,* 535 F.2d 257, 267–69 (4th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976), as authority that the court lacks power to order that the incumbent Daniel Brattain be displaced in order to remedy the discrimination against the plaintiff. It would appear that the affirmance on appeal of this court's original order by the Fourth Circuit Court of Appeals and the Supreme Court would have settled that question. Moreover, *Patterson* does not appear to be on point. There, the American Tobacco Company was found to have violated Title VII by perpetuating the effects of its past overt racial discrimination through facially neutral promotion practices. By maintaining lines of progression and separate seniority rosters for its two branches, and by failing to post definite written job descriptions, the company made it difficult for blacks to advance into higher paying jobs which had traditionally been reserved for whites. The Fourth Circuit upheld the district court's remedy of these practices

and back pay award but refused to require *wholesale, company-wide bumping* of incumbent whites by more senior blacks. In reversing the lower court's exercise of its equitable powers, the Court of Appeals emphasized the disruption of the company's business and harm to incumbents that extensive bumping entailed.

Here the interests to be balanced are very different. Only two employees are involved, Brattain and Spagnuolo. When the company decided to merge the two jobs formerly occupied by these two men and to give Brattain the combined position while demoting Spagnuolo, it unlawfully discriminated against Spagnuolo on account of his age, as the jury determined. Reinstating Spagnuolo to the combined position is not a stigmatizing demotion of Brattain like the kind incumbents would have been subjected to in *Patterson*. Indeed, as plaintiff has suggested, if the job offered plaintiff is so good, Whirlpool can give it to *Brattain* without hurting him. Brattain's situation is not comparable to those of the incumbents in *Patterson*—nor is the alleged but not proved disruption to management.

*Cline v. Roadway Express, Inc.*, 689 F.2d 481 (4th Cir. 1982), is the latest word from the Fourth Circuit Court of Appeals on reinstatement. *Cline* expressly upheld the United States District Court for the Eastern District of North Carolina in ordering reinstatement of an employee discharged in violation of the Age Act.

Equitable relief of reinstatement in favor of another employee was expressly provided under Title VII in *EEOC v. Kansas City Power & Light Co.*, 27 E.P.D. ¶ 22,229 (W.D. Mo.1981), and in *Griffiths v. Hampton*, 12 E.P.D. ¶ 11,038 (D.D.C.1976), the court ruled that it

"... does have the power to order that an employee holding a particular position be displaced in favor of another employee who was denied that position in violation of Title VII. Any other result would be utterly irreconcilable with the purposes of the Equal Employment Opportunity Act, and would nullify the effect of the Act as to a large proportion of the cases that arise under it, i.e. all those cases where promotion has been denied as a result of impermissible discrimination, and in which the contested job is a relatively unique one or comparable jobs are unavailable. While this result may be regrettably harsh in particular cases, it must be remembered that an individual placed in a given job as a result of discrimination against a competitor for that job has no vested right to the job. Title VII recognizes this, and accordingly gives the courts broad discretion in fashioning whatever equitable remedies may be necessary to undo the effects of the discrimination, including the power to order that an incumbent be removed from a position and replaced with the person who would have had the job originally, but for the discrimination. 42 U.S.C. § 2000e–5(g); *Wells v. Perry* [9 EPD ¶ 10,226] (C.A. 75–856, D.D.C., *Memorandum-Order of June 23, 1975*); *Franks v. Bowman Transportation Company*, [11 EPD ¶ 10,777] 44 U.S.L.W. 4356, 424 U.S. 747 [96 S.Ct. 1251, 47 L.Ed.2d 444] (March 24, 1976); *cf. Parks v. Dunlop*, [10 EPD ¶ 10,371] 517 F.2d 785 (C.A. 5, 1975); *Ringer v. Mumford*, [5 EPD ¶ 8481] 355 F.Supp. 749 (D.D.C., 1973)."

Defendant for nearly three years has delayed and refused to reinstate plaintiff to his original job or to a comparable job. Three years of delay, like Justice Holmes' opinion of "[t]hree generations of imbeciles" (*Buck v. Bell*, 274 U.S. 200, 207, 47 S.Ct. 584, 585, 71 L.Ed. 1000 (1927)), are enough.

IT IS THEREFORE ORDERED:

1. That all defendant's motions are denied.

2. That defendant shall, without delay, reinstate the plaintiff as Builder Sales Manager of the Charlotte Sales Division of the defendant, or as the combined Builder/Heating and Cooling Sales Manager of the Charlotte Sales Division.

3. That until the plaintiff is so reinstated, the defendant shall pay the plaintiff the same salary, benefits and emoluments, in-

cluding increases and bonuses, as have been or are being and will be paid to other managers of the Builder Department or other joint managers of the Builder/Heating and Cooling Department with no less seniority than the plaintiff—reduced, however, by what plaintiff is able to earn in other activity.

4. Beginning ten (10) days from the date of this order, and thereafter, at the end of each month, or until such time as plaintiff is reinstated by defendant as above ordered, defendant shall pay to plaintiff the sum of Two Thousand Six Hundred Forty-Three Dollars ($2,643.00), less appropriate withholdings for state and federal income tax only, representing the difference between the monthly base salary of the incumbent Builder/Heating and Cooling Sales Manager at defendant's Charlotte Sales Branch and plaintiff's monthly earnings in other employment. Said sum shall be paid jointly to plaintiff and his attorneys and shall be mailed to plaintiff's attorneys on or before the 3rd day of each succeeding month.

Other matters in controversy will be decided by orders soon to be issued.