**Colombo A. SPAGNUOLO, Plaintiff,**

v.

**WHIRLPOOL CORPORATION, Defendant.**

No. C–C–78–107–M.

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 19, 1982.

Supplemental Opinion Nov. 2, 1982.

Samuel M. Millette and Ernest S. DeLaney, III, DeLaney, Millette, Dearmon & McKnight, P.A., Charlotte, N.C., for plaintiff.

Charles J. Griffin, Jr. and Joan McAvinn Gale, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., and Julia V. Jones, Moore & Van Allen, Charlotte, N.C., for defendant.

## ORDER

McMILLAN, District Judge.

The lengthy history of this suit under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.,* has been

recently summarized by the court in its order of September 27, 1982. 548 F.Supp. 104. As noted in that order, defendant has failed to make substantial payments required by the original judgment in favor of plaintiff and by subsequent orders of the court. In particular, having failed to reinstate plaintiff, defendant has made no effort to provide him the same benefits and emoluments received by Whirlpool's Builder Sales Managers or Builder/Heating and Cooling Sales Managers with comparable seniority.

Plaintiff requests that the court require defendant to compensate him for the value of the following lost benefits: medical and dental insurance, life insurance, pre-retirement life insurance, disability income insurance, vacation benefits, yearly medical examinations, trips with customers, and a service award (gold watch). With respect to pension coverage, plaintiff does not now seek money compensation but does seek retroactive seniority and continued contributions by Whirlpool to the pension fund such that his eventual distribution from the fund will be what it would have been had the company never discriminated against him.

Plaintiff also claims that defendant's payment of interest under the judgment is deficient in the amount of $224.57.

Finally, plaintiff requests an additional allowance for attorneys' fees and costs incurred since December 10, 1981.

Defendant is still bound by the original judgment. Until defendant reinstates plaintiff, it must treat him exactly as if he were employed as a Sales Manager with the company. In terms of wages and other earnings, Whirlpool must continue to compensate plaintiff on a monthly basis in an amount equal to the earnings of comparable sales managers, reduced by what plaintiff earns elsewhere. Pursuant to the December 1981 consent decree, this figure is based on the earnings of Daniel Brattain, the present Builder/Heating and Cooling Sales Manager for Whirlpool's Charlotte Sales Division. In terms of fringe benefits, defendant has been and continues to be obligated to provide plaintiff with the same benefits

package enjoyed by the company's managers. Thus the make-whole relief plaintiff seeks as to pension benefits is precisely what he is entitled to. Similarly, he is entitled to the equivalent of whatever insurance coverage, medical examinations, and vacation benefits he would receive if reinstated to Brattain's present position. (For reasons discussed below, the trips and watch claimed by plaintiff do not fall within this general principle and will be treated separately.)

Whirlpool may satisfy this obligation in any way it wishes, as long as it does so completely and responsibly. Where insurance is involved, Whirlpool may include plaintiff in the various plans, set up a separate fund to cover him, bear the risks itself (assuming the corporation remains solvent), or devise any other method to guarantee that plaintiff will be indemnified for losses as fully as if Whirlpool had not undertaken to discriminate against him.

As to the specific claims for compensation due through June 25, 1982, the evidence shows that plaintiff and his family have had the good fortune not to suffer any catastrophe which would entitle them to compensation under the life insurance, the pre-retirement life insurance, and the disability income insurance plans. And plaintiff has not incurred any out-of-pocket expenses to make up for his loss of Whirlpool coverage. Defendant is therefore not required to compensate plaintiff now for the lost value of these plans. As explained above, should plaintiff sustain a loss compensable under one of these plans, Whirlpool must compensate him in the full amount provided for by the coverage, less any compensation made to plaintiff by another employer. If defendant refuses to obey the court's order to reinstate plaintiff and if he *should* choose to purchase comparable insurance coverage, Whirlpool must compensate him for the costs incurred in doing so.

Plaintiff's claim for medical expenses is more complicated because he *has* acquired coverage with his present employer and with Blue Cross/Blue Shield and he has

incurred expenses not covered by either of these plans. Defendant must compensate plaintiff for all out-of-pocket expenses to replace Whirlpool's medical coverage. The amount owed to plaintiff should be calculated as follows:

Costs actually incurred to acquire comparable coverage, plus any payments which would have been made under the Whirlpool plan but were not made under plaintiff's substitute coverage, minus the cost of the Whirlpool coverage to employees such as plaintiff.

The parties have not provided the court with all the information necessary to make this calculation. The court trusts, however, that the parties can arrive at this figure expeditiously as the method of calculation is essentially that which defendant concedes is appropriate.

Dental benefits can be computed from the record before the court. The evidence shows plaintiff's dental costs compensable under the Whirlpool plan from January 1, 1980, through June 25, 1982, the payments that would have been made to plaintiff under the Whirlpool plan, and the costs plaintiff would have incurred in buying the Whirlpool coverage. From these figures the value of lost dental benefits for the period in question is determined to be $676.00 and Whirlpool must compensate plaintiff in that amount. *See* Plaintiff's Supplemental Affidavit with respect to Fringe Benefits.

Plaintiff also claims lost vacation benefits. He is presently being compensated for the difference between his present earnings and those of Brattain for fifty-two weeks of the year. Vacation benefits can be added to this only if plaintiff gets fewer weeks vacation at his present job than he would have received at Whirlpool. If such is the case, for any weeks of vacation he no longer receives, plaintiff should receive an amount equal to Brattain's full earnings, undiminished by what he earns elsewhere. Defendant acknowledges that such an adjustment may be appropriate. Defendant's Memorandum of Law on Contested Issues at 8, n. 7. If required, this adjustment shall be made immediately for the period between trial and the entry of this order and shall be included as part of the periodic adjustments in compensation previously ordered by the court.

Plaintiff does not claim to have thus far incurred any costs for yearly medical examinations that would have been paid for by Whirlpool. Though he is not, as he alleges, entitled to compensation for examinations previously received by Brattain, he is entitled to have, at Whirlpool's expense, examinations comparable to those provided to Brattain as an emolument of his job. Whirlpool has offered to compensate him for any such examinations he undergoes. Defendant's Memorandum of Law on Contested Issues at 9.

Plaintiff also seeks compensation for several trips taken by Brattain. One of these is a prize trip (valued at $2,698.00) awarded to Brattain as part of his earnings. Whirlpool agrees that it must compensate plaintiff for this trip and agrees to do so when the difference between plaintiff's and Brattain's earnings are adjusted at the end of the year, pursuant to this court's order. Defendant's Memorandum of Law on Contested Issues at 8. Payment at that time will satisfy defendant's obligation with respect to the trip in question.

The other trips for which plaintiff seeks compensation are ostensibly business trips which Brattain has made with customers. Though the court recognizes that plaintiff is worse off without these boondoggles, it does not in its discretion believe that he is any more entitled to recover for this loss than he is for other lost amenities, such as, perhaps, a more attractive office or more frequent expense-account lunches than he presently enjoys.

Whirlpool's refusal to provide plaintiff with a gold watch awarded to employees for twenty-five years of service is just the latest example of its unwavering hardheartedness. Plaintiff does not dispute, however, that he was entitled to this award prior to the time of trial. Accordingly, compensation for it should have been sought as part of the original damages award and cannot be claimed now.

The evidence is uncontradicted that defendant's payment of interest to plaintiff under the original judgment is deficient in the amount of $224.57. Plaintiff's Affidavit with respect to Fringe Benefits, Appendix "A." Defendant shall therefore compensate plaintiff in that amount.

Under the December 10, 1981, partial consent decree, plaintiff's attorneys received an additional allowance of attorneys' fees in the amount of $20,000 to cover services rendered up to that time. They now seek a further accounting for fees and costs incurred by the plaintiff since then. In setting attorneys' fees, the court is required to consider twelve guidelines originally set out in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and adopted by the Fourth Circuit Court of Appeals in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

The Fourth Circuit, in a later case, *Anderson v. Morris*, 658 F.2d 246 (4th Cir. 1981), reviewed the manner in which the *Johnson* guidelines are to be applied by district courts. A base amount for the fee award is to be determined by multiplying the number of hours reasonably expended on the case by the customary hourly rate of compensation (guidelines one and five). This amount is then adjusted up or down by the court on the basis of the other *Johnson* factors.

Following that practice, I make findings as follows:

1. *The time and labor expended.*—The affidavits of plaintiff's counsel demonstrate, and the court finds, that attorneys Millette and DeLaney have worked 203.3 hours on this case since the last fee award. This figure is ten hours less than that presented by plaintiff's attorneys, because the time ledger attached to their August 23, 1982 affidavit duplicated two items included in their petition and affidavit of June 25, 1982. Other than this clerical error, there does not appear to be any duplication of effort by the attorneys.

5. *Customary fee for like work.*—Plaintiff's attorneys request a fee of $120.00 per hour. This rate is within the range of charges recently awarded in this area for similar work.

The court thus determines initially that plaintiff is entitled to attorneys' fees for 203.3 hours × $120.00 or $24,396.00. In accord with *Anderson v. Morris, supra,* this total is to be adjusted as called for by the remaining *Johnson* guidelines.

2. *The novelty and difficulty of the questions raised.*—The matters in dispute since the last fees awarded have involved primarily factual investigation, organization, and presentation of information. No particularly unusual or difficult issue was raised or briefed. This factor justifies no adjustment in the award.

3. *The skill required.*—The factual disputes involved in this stage of the proceedings have for the most part been conducted through discovery, affidavits, and written argument. No adjustment is indicated on this ground.

4. *The preclusion of other employment by the attorneys because they handled this case.*—This case has excluded other employment by counsel to the extent that they have devoted over 200 hours to this case during the period covered by this order.

6. *Whether the fee is fixed or contingent.*—Since the judgment in plaintiff's favor, his attorneys have faced little or no risk in providing him legal services without a fixed fee. Since the attorneys no doubt expected they would be awarded additional fees by the court, no upward adjustment is justified.

7. *Time limitations imposed by the client or the circumstances.*—This factor does not seem relevant.

8. *The amount involved and the results obtained.*—Since the last fee award, plaintiff's counsel have prevailed in every dispute between the parties that the court has been forced to resolve. This factor will support an upward adjustment in the fee.

9. *Experience, reputation and ability of the attorneys.*—Plaintiff's attorneys have continued to display skill, diligence, and ex-

perience. Their reputation is excellent and commensurate with their ability. This factor supports an upward adjustment of fees.

10. *The undesirability of the case.*—Not all lawyers are willing to handle civil rights cases for plaintiffs; such cases require much labor and dedication. The matters most recently in dispute have been particularly unpleasant because Whirlpool's attorneys have stubbornly insisted on protracting this case and denying plaintiff the relief he is entitled to for as long as possible. This factor indicates the fees should be adjusted upward substantially.

11. *The nature and length of the professional relationship with the client.*—Plaintiff appears to be a one-time client for this case. This factor has no effect on the award.

12. *Awards in similar cases.*—The award made here is well within the range of fees previously allowed in similar cases.

The combined effect of factors 4, 8, 9 and 10 justify an upward adjustment of attorneys' fees. The court finds reasonable attorneys' fees in this case to be $35,000.00.

Plaintiff is also entitled to recover expenses in the amount of $204.53, plus an additional $250.00 for the services of an expert witness.

IT IS THEREFORE ORDERED:

1. That until such time as defendant shall reinstate plaintiff as required by the court's order of September 27, 1982, and by previous orders, defendant shall take whatever steps necessary to insure that plaintiff has the full protection of the life insurance, pre-retirement life insurance, disability income insurance, and medical and dental insurance benefits provided to Daniel Brattain or the incumbent Builder/Heating and Cooling Sales Manager for Whirlpool's Charlotte Sales Division. Defendant shall further insure that plaintiff is in a position to receive at the appropriate time whatever pension benefits he would have been entitled to had he remained continuously employed as a Whirlpool Sales Manager through the time of his natural retirement.

2. Upon receipt of the information necessary to calculate the value of plaintiff's lost medical benefits in the manner described above, defendant shall promptly reimburse him for any such loss.

3. Defendant shall compensate plaintiff in the amount of $676.00 for the value of lost dental benefits for the period from January 1, 1980, through June 25, 1982.

4. Any adjustment in compensation to plaintiff required by the above discussion of vacation benefits shall be made immediately.

5. Until defendant reinstates plaintiff, it shall compensate him for the costs of any yearly medical examinations he receives which would have been paid for by Whirlpool had plaintiff remained with the company in a sales manager position.

6. As part of the adjustment in compensation to plaintiff which the court has previously ordered to be made after the end of this year, defendant shall pay plaintiff $2,698.00 for the prize trip awarded Daniel Brattain.

7. As it pertains to past medical examinations provided to Brattain, trips made by Brattain with customers, and the gold watch service award, plaintiff's motion to compel compensation is denied.

8. On or before January 31, 1983, defendant shall furnish to plaintiff in writing, and under oath, and with supporting documentation, records of all payments, fringe benefits, and emoluments (in money or otherwise) provided to Brattain or the incumbent Builder/Heating and Cooling Sales Manager of the defendant's Charlotte Sales Branch during, or for, the year 1982. Within the same time, plaintiff shall provide defendant similar supporting documentation concerning any fringe benefits provided to him by all other employers, any costs incurred in duplicating Whirlpool coverage, and any losses or expenses compensable under the various Whirlpool plans. Thereafter, the parties shall determine what adjustments are necessary to insure that plaintiff receives fringe benefits equivalent to those he would have received were he still em-

ployed by Whirlpool in a sales manager position. If necessary, similar information shall be provided and adjustments made at six-month intervals thereafter.

9. Defendant shall pay plaintiff $224.57 in deficient interest.

10. Defendant shall pay to plaintiff's counsel the following sums:

| | |
|---|---|
| Attorneys' fees | $35,000.00 |
| Expenses | 204.53 |
| Expert witness fee | 250.00 |
| | $35,454.53 |

## SUPPLEMENTAL OPINION

Defendant's motion for leave to file supplemental material is allowed.

Defendant's motion to stay this court's order of September 27, 1982, is denied.

Defendant's motion to alter or amend the court's order of September 27, 1982, is denied.

It was on the 26th day of February, 1981, that this court's judgment against defendant was affirmed by the Court of Appeals. Defendant waited until June 10, 1982— more than a year after that decision—before making any offer of reinstatement to plaintiff. As it was pointed out in the September 27, 1982 order, the position which was offered, even at that late date did not comply with the court's order; the position offered was not comparable to the job which plaintiff was forced out of in January, 1978. As to defendant's present offer, it does not comply with the court orders either. Defendant offers to send plaintiff, a 59-year-old, long time resident of this community, to headquarters in Dallas, Texas, or Denver, Colorado, to work out the remaining years of his career, while a man who holds his present job because of defendant's unlawful discrimination against the plaintiff remains in Charlotte. If the Age Discrimination in Employment Act is to have any meaning, it should not be the plaintiff who has to move half way across the continent if, in fact, such a move is required of anyone. Defendant's offer continues to be a travesty on the purpose and meaning of the Act. If the words of the

Act are to be reduced to "language illusory in symbol and hollow in substance" (Marshall, J., dissenting in *City of Mobile v. Bolden,* 446 U.S. 55, 129, 100 S.Ct. 1490, 1533, 64 L.Ed.2d 47 (1980), it will not be done by this court.

All of defendant's motions except for leave to file supplemental material are denied.