Colombo A. SPAGNUOLO, Appellee,

v.

WHIRLPOOL CORPORATION,
Appellant.

No. 82–2048.

United States Court of Appeals,
Fourth Circuit.

Argued May 12, 1983.

Decided Sept. 1, 1983.

Charles J. Griffin, Jr., Chicago, Ill. (Joan McAvinn Gale, Dana S. Connell, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., on brief), for appellant.

Samuel M. Millette, Ernest S. Delaney, III, Charlotte, N.C. (DeLaney, Millette, DeArmon & McKnight, P.A., Charlotte, N.C., on brief), for appellee.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and TURK,* Chief District Judge.

HARRISON L. WINTER, Chief Judge:

Whirlpool Corporation appeals from several orders entered by the district court

* Hon. James C. Turk, Chief Judge, United States District Court for the Western District of Virginia, sitting by designation.

after we affirmed its judgment in this age-discrimination action in *Spagnuolo v. Whirlpool Corporation,* 641 F.2d 1109 (4 Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981). Supplementing and enforcing its original judgment, the district court ruled that certain positions offered Spagnuolo by Whirlpool were not the equivalents of the position from which he had been illegally discharged and therefore Spagnuolo was not required to accept them in satisfaction of the judgment or in mitigation of damages. Further, it directed reinstatement of Spagnuolo in his former position, as it previously existed or as it was combined with another position, "without delay" with the effect of displacing the present incumbent. Finally, it awarded plaintiff additional compensation and counsel fees.

We affirm the rulings that plaintiff was not required, either in satisfaction of judgment or in order to mitigate damages, to accept any of the three positions offered to him by Whirlpool. We reverse, however, the district court's order requiring Whirlpool to reinstate plaintiff to his former position, as that position remains occupied by his successor. Instead, we instruct the district court to take alternative steps to ensure that Whirlpool is making a satisfactory effort to comply with the former reinstatement order. Finally, we conclude that the district court should have limited its award of attorneys' fees to the amount requested by plaintiff's counsel, and we direct that the award be reduced.

## I.

Plaintiff Colombo Spagnuolo was, as of the summer of 1977, the Manager of the Builder Department of the Charlotte Sales Division of defendant Whirlpool Corporation. In November 1977, Whirlpool combined his position with that of the Manager of Heating and Cooling Sales, then held by Daniel Brattain. The new, combined position, entitled "Builder/Heating and Cooling Sales Manager," was given to Brattain, and Spagnuolo was demoted to Territory Manager. Spagnuolo thereupon filed suit against Whirlpool, alleging that he had been the victim of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* Spagnuolo obtained a jury verdict in his favor, and the district court awarded him damages, costs, post-judgment interest, and attorneys' fees through the time of trial. In addition, the district court entered a reinstatement order, instructing

[t]hat the defendant shall reinstate the plaintiff as Builder Sales Manager of the Charlotte Sales Division of the defendant or as the combined Builder/Heating and Cooling Sales Manager of the Charlotte Sales Division of the defendant, or in a position of equal stature, compensation, future prospects and responsibility.

The judgment entered on the verdict of liability and the equitable relief, including the reinstatement order, were affirmed by us on appeal, and certiorari was denied by the Supreme Court. *Spagnuolo v. Whirlpool Corporation, supra.*

Whirlpool, upon receiving the reinstatement order, decided not to uncouple the newly-created combined position nor to replace Brattain with Spagnuolo in the combined position, but instead to wait for a comparable position to become available for Spagnuolo. By December of 1981, however, no offer had been made to Spagnuolo, and the parties agreed upon a partial consent decree compensating Spagnuolo for lost wages (i.e., the difference between what he would have earned in the combined position, some $3,643 monthly, and what he was earning in mitigation of damages, some $1,000 monthly) through 1981, plus attorneys' fees through the Supreme Court filing. As of May 1982, Whirlpool still had not offered Spagnuolo any position, and the district court entered an order requiring Whirlpool to pay lost wages for the first three months of 1982 and to commence sending monthly checks to Spagnuolo covering his lost wages. Subsequently, the district court entered a further order clarifying Spagnuolo's rights to insurance coverage and fringe benefits.

In June of 1982, Whirlpool offered Spagnuolo the position of National Account Manager/Manufactured Housing, assertedly in satisfaction of the reinstatement order. The district court, however, concluded that the proffered position was essentially different from that in which Spagnuolo was previously employed and that Spagnuolo had the right to reject the offer. *See* 548 F.Supp. 104 (W.D.N.C.1982). Moreover, the district court, concluding that Whirlpool had been given sufficient time to find Spagnuolo an alternative position, amended its reinstatement order to require that Whirlpool either uncouple the newly-created combined position and give Spagnuolo back his old job or replace Brattain with Spagnuolo in the combined job. *See id.* at 108–10.

Whirlpool immediately filed a motion requesting that its option under the original reinstatement order to place Spagnuolo into a comparable position be revived, and simultaneously offered Spagnuolo the position of Builder Sales Manager—his old job—in either Dallas, Texas or Denver, Colorado. The district court also rejected these proffered positions as compliance with its orders and reaffirmed its amended reinstatement order. *See* 550 F.Supp. 432, 437 (W.D.N.C.1982). Finally, plaintiff's attorneys requested additional attorneys' fees in the amount of approximately $25,600 for post-judgment work, and the district court entered an order awarding them some $35,-000 in fees. *Id.* at 435–37.

Whirlpool thereupon noted an appeal to this court and filed a motion for a stay of the district court's orders. By an order dated January 5, 1983, we denied Whirlpool's motion for a stay of the lost wages portion of the district court's orders, but granted a stay pending appeal of the modified reinstatement order and of the attorneys' fees award.

## II.

Whirlpool argues first that the district court erred in concluding that its proffered position as National Account Manager did not, as an equivalent job, satisfy the reinstatement order. The district court's con-

clusion, however, is plainly a question of fact, and it is against the heavy burden of the clearly erroneous rule that Whirlpool's challenge must be judged. Rule 52(a), Fed. R.Civ.P.; *cf. Williams v. Albemarle City Board of Education,* 508 F.2d 1242, 1243 (4 Cir.1974) (in banc). Moreover, we have held that the comparability of any alternative position must be judged by a broad range of factors, and not merely any one criterion alone. *Id.*

■ The first criterion considered by the district court was stature. Whirlpool asserts that the National Account Manager is one rung higher in the overall corporate hierarchy than is the combined job. But the evidence showed that the National Account Manager does not supervise anyone and has no secretary, while in his old job Spagnuolo supervised five to ten salesmen and had a full-time secretary. Moreover, Spagnuolo notes that the work to be done in the proffered job is simply the nationwide selling of products that were formerly sold locally by salesmen Spagnuolo supervised. As such, Spagnuolo argues that the National Account Manager is nothing more than a glorified traveling salesman. Finally, Spagnuolo points with emphasis to "traveling," since the National Account manager will spend 75 percent of his time on the road, while in his old job Spagnuolo spent only 20 percent of his time on the road, and all of that in North or South Carolina.

The second factor considered was the prospect for future advancement. Because the position has only existed for one year, Whirlpool criticizes the district court's reliance on the fact that no National Account Manager had ever been promoted. Instead, Whirlpool contends that because it plans to invest heavily in this area of sales, with expected revenues of $50 million annually compared to the $9 million annually in Spagnuolo's old job, the prospects for advancement are far greater. In response, however, Spagnuolo has demonstrated that Whirlpool in the past attempted to sell these products locally with notable lack of success, and is now trying a nationwide

marketing strategy. From the lesson of history, we agree that there is substantial doubt as to the prospects for success in an area that has already failed on a local level, as well as to Whirlpool's commitment to the area if initial indications are similarly gloomy.

The third factor examined was the amount of compensation. Here Whirlpool contends that the "salary guidepoint"—of which the actual salary can be from 85 percent to 120 percent—is some $268 monthly higher for the National Account Manager position. But here, too, Spagnuolo points out that this differential is offset by the fact that the National Account Manager is not eligible for certain prizes and trips that came to him in his old job.

On this record we are unable to conclude that the district court's finding that the National Account Manager position was not equivalent employment satisfying the reinstatement order was clearly erroneous. The combination of the various factors convinces us that the district court could properly conclude that the National Account Manager position is not, when looked at as a whole, as desirable as was Spagnuolo's former position.

### III.

Whirlpool next contends that the district court erred in finding that Whirlpool's offers of the Building Sales Manager position (Spagnuolo's old position) in either Dallas or Denver were inadequate to fulfill the comparable-job reinstatement order. Although the original reinstatement order was silent as to whether it was required that the comparable position be in Charlotte, the district court's rejection of these two offered positions as compliance with the order made clear that it so interpreted its original order. We must thus decide the question of whether the district court abused its discretion in ordering Whirlpool to reinstate Spagnuolo in its Charlotte division. We conclude that it did not.

The district court, may, and indeed must, fashion an order that will grant "the most complete relief possible" toward putting the victim of age discrimination back into the position he would have been in but for the unlawful discrimination. *See Franks v. Bowman Transportation Co.,* 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976). Obviously Spagnuolo would, but for the age discrimination, have held the Building Sales Manager job in Charlotte, not in a distant city. Moreover, a requirement to move to a new city is likely to be particularly burdensome to a victim of age, rather than race or sex, discrimination, because the victim is almost by definition likely to have lived and worked in the community for a large number of years. In the present case, for example, Spagnuolo has lived and worked in the Charlotte area for the past fifteen years. Thus, not only does he have substantial personal ties to the community, it is likely that he has long-standing business relationships of great value to a person involved in sales. Under these circumstances, it is plain that a requirement to move halfway across the country would put Spagnuolo in an objectively worse position than he was in prior to the unlawful age discrimination.

Although an employee ordinarily would be disadvantaged by having to accept reinstatement in a new city, this would not be true if the employer could demonstrate that, under its corporate policy, it has retained and freely exercises the right to transfer workers to new cities as its requirements demand. Under such circumstances, the employee would not be in a worse position, because the move could have been required of him in any event. But, in the present case, Whirlpool never demonstrated that, under its personnel policies, it retains the right to transfer an employee to a distant city without an attendant promotion or raise in pay, much less that it freely exercises that right. We are therefore of the view that Whirlpool failed to demonstrate that either the Dallas or Denver positions would leave Spagnuolo in a position equivalent to that held prior to the age discrimination, and we think that the district court did not err in rejecting those positions as complying with its order.

## IV.

Whirlpool contends that even if Spagnuolo was not required to accept the National Account Manager position or the Dallas or Denver jobs in satisfaction of judgment, he should have been ordered temporarily to accept one of those positions in mitigation of damages. As a general matter, the parties agree that the victim of purported age discrimination must make reasonable efforts to seek alternative employment, both before and after judgment. *See, e.g., EEOC v. Sandia Corp.,* 639 F.2d 600, 627 (10 Cir.1980). Thus, the question is whether plaintiff's obligation to mitigate damages includes an obligation to accept positions in distant cities.[1]

The long-settled rule in the labor area is that a wrongfully discharged employee need not accept, in mitigation of damages, employment that is located an unreasonable distance from his home. *See Oil, Chemical & Atomic Workers Int'l Union v. NLRB,* 547 F.2d 575, 603 (D.C.Cir. 1977) (citing cases); *Florence Printing Co. v. NLRB,* 376 F.2d 216 (4 Cir.), *cert. denied,* 389 U.S. 840, 88 S.Ct. 68, 19 L.Ed.2d 104 (1967). There is no authority for a contrary rule under either Title VII or ADEA; nor do we think one appropriate. As noted above, relocation, even for a temporary period, is likely to be particularly unwelcome to a victim of age discrimination, who is most likely to have substantial personal and business ties to his community. We therefore conclude that the district court did not

err in concluding that Spagnuolo's continuing duty to mitigate his damages does not extend to accepting employment that is unreasonably distant from Charlotte.[2]

## V.

We turn next to the question of whether the district court exceeded its authority by amending its reinstatement order so as to require Whirlpool either to uncouple the combined job, giving Spagnuolo back his old position, or to replace Brattain with Spagnuolo in the combined position. Whirlpool argues that because this order mandates the displacement of an "innocent" incumbent, Brattain, from his position, it is an abuse of discretion.

Section 7 of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(b), grants to the district courts jurisdiction to grant such legal and equitable relief as may be appropriate to effectuate the purposes of the Act, including judgments compelling employment, promotion, or reinstatement. The sparse legislative history gives no further guide to the limits of the remedial powers granted the district courts. *See* H.Rep. No. 805, 90th Cong., 1st Sess. (1967), reprinted at 1967 U.S.Code Cong. & Ad.News 2213, 2218, 2222. We think, however, that guidance as to the appropriateness of various forms of injunctive relief can be drawn by analogy from cases applying the remedial provisions of Title VII, 42 U.S.C. § 2000e–5(g).[3] Those

---

1. Although the National Account Manager position was nominally to be based in Charlotte, the evidence indicated that its occupant would be required to spend 75 percent of his time on the road. *See* page 117 *supra.*

2. Whirlpool argues that Spagnuolo's current job, taken in mitigation of damages, constitutes an inadequate effort to minimize Whirlpool's losses. Spagnuolo's present position pays only $12,000 a year, compared to the roughly $42,000 annual salary for his old job with Whirlpool. The issue of whether Spagnuolo has made inadequate efforts to mitigate his damages by searching for alternative employment within the Charlotte area, however, is not before us on appeal. Instead, we simply hold that Spagnuolo's duty to mitigate his damages does not include accepting jobs unreasonably distant from Charlotte.

3. Because Congress chose to pattern the ADEA enforcement provisions after those from the Fair Labor Standards Act, 29 U.S.C. §§ 211(b), 216, 217, rather than Title VII, analogies between ADEA and Title VII will not always be appropriate. *See Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). Nonetheless, the Supreme Court has recognized that Congress chose to augment the FLSA remedies by authorizing equitable relief such as reinstatement, *see id.* at 581, and that in certain instances analogies between the enforcement provisions of ADEA and Title VII will be valid, *see Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). We conclude that the similarities between the language of the provisions authorizing equitable relief in ADEA, *see* 29 U.S.C. § 626(b), and Title VII, *see* 42 U.S.C. § 2000e–5(g), and the congruence

provisions likewise authorize the district court to order such equitable relief, including reinstatement, as may be appropriate. *Id.* We therefore turn to a review of the limitations we have imposed on reinstatement orders in Title VII actions.

The starting point for our review of equitable relief in Title VII cases is the Supreme Court's admonition that the district court is obligated to grant "the most complete relief possible." *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976). Moreover, we have consistently noted that the fashioning of equitable relief is in the first instance entrusted to the broad discretion of the district court. *See Chisholm v. United States Postal Service,* 665 F.2d 482, 498–99 (4 Cir.1981); *Sledge v. J.P. Stevens & Co.,* 585 F.2d 625, 643 (4 Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979).

Over the past fifteen years, however, the "rightful place" theory has been adopted by this and other courts as the generally appropriate mechanism for injunctive relief under Title VII. In *Quarles v. Philip Morris, Inc.,* 279 F.Supp. 505 (E.D.Va.1968), Judge Butzner, sitting by designation as a district judge, fashioned a system whereby blacks who suffered past discrimination in promotions would be able to bid for jobs, on the basis of seniority, *as those jobs became available. See also* Note, *Title VII, Seniority Discrimination, and the Incumbent Negro,* 80 Harv.L.Rev. 1260 (1967). This system was adopted shortly thereafter by the Fifth Circuit in *Local 189 v. United States,* 416 F.2d 980 (5 Cir.1969), *cert. denied,* 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970). The court there held that under its "rightful place" theory, aggrieved black employees would be able to bid, with full seniority, for future job vacancies, but would *not* be permitted to "bump" white employees out of their current positions. *Id.* at 988. We subsequently concurred in this view. *See United States v. Chesapeake & Ohio Ry.*

*Co.,* 471 F.2d 582 (4 Cir.1972), *cert. denied,* 411 U.S. 939, 93 S.Ct. 1893, 36 L.Ed.2d 401 (1973).

Since our adoption of the "rightful place" theory, we have had occasion to address specifically the question of "bumping" white employees to provide immediate positions for blacks or women. In *Patterson v. American Tobacco Co.,* 535 F.2d 257 (4 Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976), we held that, although logic might compel a contrary result, one of the compromises deemed pragmatically necessary to Title VII's enactment by Congress was an assurance that it would not be used to displace incumbent workers in favor of persons who would have held their jobs but for illegal discrimination. *Id.* at 268. We also noted that several factors counsel against bumping "innocent" employees. First, there would be resistance from, and a sense of unfairness to, incumbent whites who had not themselves engaged in discrimination and who had settled expectations in their jobs. Second, the bumping might well require bumping of other black employees. Third, wholesale bumping orders would disrupt the business's operations and would excessively entangle the district court in the operations of the business. Finally, an alternative remedy of back pay was available to complement the rightful place theory of filling vacancies. We therefore concluded that the remedy ordered by the district court should be amended to exclude any bumping of incumbent workers.

We returned to this question in *Sledge v. J.P. Stevens & Co., supra,* 585 F.2d 625. There the district court had ordered that where a black employee was about to be laid off (due to lack of work), that person could "bump" the most junior white employee in a different department, who would instead be laid off, if the black employee had more plant-wide seniority, rather than departmental seniority, as was the company's criterion for layoffs. We reversed, finding that this order would result

---

of purpose behind the equitable relief—to put the injured party back into the position he would have been in but for the discrimina-

tion—make appropriate the application of the teachings of Title VII reinstatement cases to ADEA reinstatement questions.

in harm to innocent white incumbents in violation of *Patterson,* and, moreover, that it improperly abrogated the departmental seniority system, which itself had not been shown to be in violation of Title VII. *Id.* at 651–52.

This review of our previous cases makes clear that the district court's authority in preparing a scheme whereby relief will be provided to injured employees does not, in the first instance, extend to ordering the displacement or bumping of incumbent employees. Instead, the district court should adopt the rightful place theory, whereby the injured employees will be given full seniority rights and permitted to obtain the next available vacancy by means of that seniority, and will in the interim period be awarded back pay to compensate for lost earnings. While this scheme will admittedly result in injured employees temporarily performing less desirable jobs—although at high pay—we think that it is the unavoidable result of the congressional process by which Title VII was enacted.

We now turn to the posture of the case before us. Here, the district court, in entering judgment immediately subsequent to trial, entered a remedial order quite in keeping with the above principles. This order required Whirlpool to reinstate Spagnuolo, if it chose, to a comparable position, and ordered that he be given back pay in the meantime. The original order, therefore, was fully authorized under the rightful place theory, because it did not require that Brattain be bumped.

The source of the district court's decision to amend its order was the subsequent lack of developments. Although the reinstatement portion of the district court's original order was stayed by us pending appeal, that stay expired on February 26, 1981, when we issued our decision affirming the district court. We refused—and the Supreme Court refused—to continue the stay pending the Supreme Court's action on Whirlpool's petition for a writ of certiorari, and thus Whirlpool was legally obligated, as of February 26, 1981, to begin its search for a comparable position for Spagnuolo. None-

theless, it was not until June 10, 1982, that Whirlpool made its first offer of a position to Spagnuolo—some fifteen and one-half months after the stay expired and some thirty months after the initial reinstatement order was filed. Even at this late date, Whirlpool's offer was, as determined by the district court and affirmed by us, wholly inadequate.

We do not doubt that the district court is confronted with the question of how to ensure compliance with its rightful place order. We infer that where a large corporation such as Whirlpool waits approximately sixteen months and then makes an inadequate effort to comply, it is not making a reasonable effort to identify appropriate vacancies and to place Spagnuolo into one such vacancy. Of course the amount of time that must pass before such an inference may be drawn will depend on the size of the company and its operations in the location, the level of the job, and the district court's observations about the efforts taken by the company to identify appropriate vacancies. Such a judgment is largely, thus, within the sound discretion of the district court, and we cannot say that the district court erred here in inferring that Whirlpool was dragging its feet in complying with the reinstatement order.

We must still face the question, however, of what further action is appropriate in light of this inference of noncompliance with the original order. The district court cannot, for the reasons given above, require Whirlpool to bump the innocent incumbent who continues to hold the position originally in dispute, regardless of the passage of time. Instead, the district court must adopt a procedure that affords—but also requires—Whirlpool the opportunity to demonstrate its compliance with the rightful place order. We think that the district court has two options, which may be employed simultaneously, for further action. First, the district court may, upon appropriate motion, require Whirlpool to disclose information regarding what positions it considers to be equivalent, whether anyone has been promoted to those positions since

the reinstatement order took effect, and why certain other positions are not appropriate. Second, the district court can inquire into what steps Whirlpool has taken to offer comparable jobs in other locations to the person holding the original job (here, Brattain), in order to try to accommodate both Brattain and Spagnuolo.[4]

█ We think that should the response to the first inquiry reveal that Whirlpool has filled a vacancy in a job that the district court concludes is comparable to the original position, the district court is empowered to bump the "new" incumbent from *that* position and order that Spagnuolo be employed in that job.[5] It is important to note that this is not bumping the original employee who was the unknowing beneficiary of discrimination, as that bumping is prohibited by Title VII. Rather, this is bumping an employee whose promotion or hiring was in violation of the court's rightful place order. This "authorized" bumping presumes that the employee who is promoted or hired after the judicial pronouncement of discrimination is no longer an innocent beneficiary. We conclude that such equitable action is authorized under both Title VII and under the district court's inherent powers to enforce its orders.

Such relief has been granted by other courts. An example is *Lee v. Macon County Board of Education,* 453 F.2d 1104 (5 Cir.1971). There, the city board of education was under a federal court order to desegregate the schools, and as part of that order closed an all-black school, thus removing its black principal. The court order required that such black principals be re-hired first into any vacancies in other schools, but the school board instead hired whites into four vacancies as they became available. On appeal, the Fifth Circuit reversed the district court's refusal to bump

one of the new white principals in favor of the black plaintiff. The court held, as to the bumping, that it was plain that the fact that the school board had already hired another person for the job could not prevent appropriate equitable relief, particularly in light of the fact that the school system knew of the court order when it hired the white principals. Thus, the court ordered immediate reinstatement including bumping.[6]

We therefore hold that the district court erred in the present case by ordering that the innocent unknowing beneficiary of the original discrimination—Brattain—be bumped from either all or part of his position. Instead, the district court should have considered the lapse of time to be *prima facie* evidence that Whirlpool has not complied with the rightful place order, and should have ordered Whirlpool to come forward with evidence as to the reason for what was, on its face, excessive delay in complying with the reinstatement order. On remand, the district court may seek this evidence and if it reveals that a comparable job opened up after February 28, 1981, and was given to another employee, Spagnuolo should immediately be given that position, displacing the incumbent. But if the evidence indicates that no such vacancy has become available, and thus that Whirlpool remains in good faith compliance with the original order, then the original order must remain in effect, with the back pay awards continuing until Whirlpool finds an appropriate vacancy.

## VI.

█ Whirlpool's final argument on appeal is that the district court's attorneys' fees award for work done by plaintiff's lawyers from December 1981 through Octo-

---

**4.** If Whirlpool fails or refuses to demonstrate its efforts to comply with the rightful place order, the district court, of course, may utilize its powers of contempt against it.

**5.** But if the inquiry shows compliance with the order, the court must simply continue its rightful place order, and may not, simply because of

the passage of time, take action against the incumbent or Whirlpool.

**6.** The court stated, however, that the district court should take appropriate steps to ensure that the school system fulfilled its contractual obligations to the white principal who would be replaced.

ber 1982 was excessive. We agree that the award must be reduced. Although plaintiff's counsel requested attorneys' fees totaling only some $25,600, the district court increased this figure by 43 percent, to $35,000. We think that this constituted an abuse of discretion. Given that plaintiff's counsel felt that $25,600 would fully compensate them for their time and efforts and requested only that sum, any further amount can only be characterized as an award of punitive damages against the defendant. Such an award, however, certainly cannot be made *sub silentio,* but there were no findings made upon which punitive damages could be awarded against Whirlpool. We therefore direct that the award of attorneys' fees be reduced from $35,000 to $25,600, the amount requested by plaintiff's attorneys.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.