**Carl F. BERNDT**

v.

**KAISER ALUMINUM & CHEMICAL SALES, INC.**

Civ. A. No. 82–3931.

United States District Court, E.D. Pennsylvania.

Feb. 21, 1985.

Thomas Preston, Philadelphia, Pa., for plaintiff.

Andrea P. Wapner by Ronald H. Surkin, Philadelphia, Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiff Carl F. Berndt brought this action against defendant Kaiser Aluminum & Chemical Sales, Inc. for discharge in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Immediately prior to trial, the parties stipulated to the dollar values of certain items of damages claimed by plaintiff and agreed that if the jury verdict on liability were in favor of plaintiff, damages would be awarded by the court upon determination of certain disputed issues of law. On December 17, 1984, the jury found that age was a determining factor in plaintiff's discharge and that the discharge was "willful." This Memorandum articulates the court's conclusions with regard to damages.

The goal of the ADEA o restore a victim of discrimination to the economic position he or she would have occupied but for the employer's unlawful conduct. *Rodriguez v. Taylor*, 569 F.2d 1231, 1238 (3d Cir.1977). Therefore, the touchstone in calculating damages is the "make whole" standard of relief.

### BACK PAY

The parties have agreed that damages properly include an award of "back pay." Back pay is measured by the difference between the salary an employee would have received but for a violation of the ADEA, less severance pay, and the salary actually received from other employment. The relevant period for measuring back pay begins at the time of loss of employment resulting from the violation and ends at the time of trial. Plaintiff was discharged as of August 31, 1981 but received two and one-half months' severance pay. Therefore, plaintiff is entitled to back pay as of November 15, 1981. The parties have agreed that plaintiff would have earned the following amounts:

| | | |
|---|---|---|
| November 15, 1981 — December 31, 1981 | $2,526 per month |
| January 1, 1982 — July 31, 1982 | $2,695 per month |
| August 1, 1982 — May 31, 1983 | $2,762 per month |
| June 1, 1983 — November 31, 1984 | $2,859 per month |

Defendant had not determined what salary increases would have been awarded in 1985; the parties agreed that for the period from December 1, 1984, damages for back salary would be calculated at the rate of $2,859 per month. The parties also agreed that earnings received from employment with Kennedy Culvert Co. and Ruth's Whatnot Shop were in the amount of $12,-814.50 and should be deducted from any backpay award. Plaintiff is, therefore, entitled to back pay through December 31, 1984 in the amount of $101,619 less $12,-814.50, a total of $88,864.50.

### PENSION

The parties have agreed to the amount that plaintiff should receive as lost pension benefits. Plaintiff's present monthly pension, payable for life beginning at age 62 (June 30, 1985), is $207.94 per month. If

plaintiff had continued in the employ of defendant to age 62 his pension payable for life would have been $410.12 per month. The parties have agreed that the lump sum present value of the difference between what plaintiff is now entitled to receive and what he would have received had he remained with Kaiser until age 62 is $16,543.00.

## PROFIT SHARING

The parties have agreed that company contributions to plaintiff's profit sharing account for the period from the date of plaintiff's discharge, August 31, 1981, until December, 1984 would have been $3,637.54 and that no calculation can be made beyond December, 1984.

## INSURANCE BENEFITS

■ Kaiser provided its employees with Blue Cross/Blue Shield and Major Medical insurance. Additionally, Kaiser had a Dental Plan and, until December 31, 1983, the Company also had a Vision Plan for its employees. The Company's health policies are all self-insured so that the Company pays the actual cost of a covered medical expense incurred by the employee. Plaintiff claims that since his discharge he has spent $1,752 for Blue Cross/Blue Shield coverage and incurred unreimbursed medical expenses, which would have been reimbursable under the Kaiser plan, in the amount of $416. The court finds plaintiff entitled to recover these amounts.

■ However, plaintiff also seeks to recover the average amount Kaiser spent per employee in providing dental, vision and life insurance coverage even though plaintiff neither obtained such insurance, nor died, nor incurred any out-of-pocket expenses which would have been compensable under Kaiser's dental or vision plan. Requiring Kaiser to reimburse plaintiff for the amounts it would have incurred in providing insurance coverage when no loss has been suffered by the plaintiff is not consistent with the "make whole" policy of the ADEA. Such an award of damages would be punitive rather than remedial. Awarding plaintiff amounts not expended for dental repairs or eye glasses would not place him in the economic position he would have been in but for his illegal discharge. Neither would it take from Kaiser the amount it saved by terminating plaintiff since no amount would have been expended even if he were not discharged. The court finds that plaintiff is entitled only to out-of-pocket expenses incurred for other insurance and/or actual medical expenses; this amount totals $2,168, *See Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393 (3d Cir.1984); *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149 (7th Cir.1981).

## EXPENSE ACCOUNT BENEFIT

■ Kaiser reimbursed all its employees for reasonable costs actually incurred for meals, hotel and customer entertainment while making customer calls. Plaintiff claims that he is entitled to $850 (calculated at a rate of $5 per week) for such expenses. Because plaintiff was terminated as a salesman, he did not incur any out-of-pocket sales-related expenses and is not entitled to reimbursement for them as a lost fringe benefit.

## AUTOMOBILE

■ Plaintiff was provided with a Company car for use in connection with his job and was permitted its personal use during non-working hours. Plaintiff claims reimbursement of the $500 per month Kaiser would have expended to provide this automobile, a total of $20,000. This measure of damages is also inappropriate since it does not reimburse plaintiff for an economic loss caused by his termination but seeks to claim an alleged benefit to Kaiser. Plaintiff contends in the alternative that he is entitled to receive the full replacement value of a new automobile, including cost of insurance and maintenance. Because plaintiff's automobile was to be used primarily for sales-related work but its availability for personal use was a fringe benefit, plaintiff may recover a sum for the loss of personal use on weekends. A *pro rata* formula allowing reimbursement for per-

sonal use two of seven days per week is an imprecise but reasonable basis for awarding damages for this item. For loss of automobile use, the plaintiff is awarded $3,036.57.

## FRONT PAY

In addition to seeking back pay from the date of termination to the date of trial, plaintiff seeks either reinstatement to his former position or an award of "front pay"—the present equivalent of pay and fringe benefits from the time of trial until June, 1985, when plaintiff will reach the retirement age of 62.

■ Plaintiff has expressed a willingness to return to work at Kaiser. Determination of whether to order reinstatement is committed to the sound discretion of the court. *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393 (3d Cir.1984). In the circumstances, this remedy is undesirable if not impossible. The relationship between plaintiff and Kaiser has been so damaged by the litigation that a continued working relationship for the four months remaining until plaintiff will retire is not feasible.

The Third Circuit has not yet determined whether a successful ADEA plaintiff is entitled to an award of so-called "front pay" in lieu of reinstatement. However, several district court cases in this Circuit have held "front pay" appropriate in situations where a court determines that reinstatement is an inadequate remedy. *See, e.g., Chern v. Ogden Service Corp.*, 33 FEP Cases (E.D. Pa.1984).

The court is of the view that "front pay" is appropriate when the plaintiff is clearly willing and able to work, the earnings from other employment are clearly defined, and the time interval for which "front pay" is awarded is relatively short. Plaintiff would have earned $17,154 in salary from January until June, 1985 had he remained at Kaiser; this amount must be reduced by the amount plaintiff is likely to have earned in other employment during this time period. On the assumption that

plaintiff will retain his current employment at Ruth's Whatnot Shop, the award of damages has been reduced by $3,510 to $13,644. In making the determination of "front pay," the court in the exercise of its discretion has not included the monetary equivalent of future fringe benefits, because it finds them too uncertain and speculative. Their award is unnecessary to place plaintiff in the position he would have been were it not for the discriminatory discharge. The award of damages for future earnings has been reduced to present value. At an interest rate of ten percent, the present value of plaintiff's future earnings until June, 1985 is $13,374.

## LIQUIDATED DAMAGES

Under the ADEA, 29 U.S.C. § 626(b), "liquidated damages shall be payable only in cases of willful violations" of the Act. If allowed, liquidated damages are in the amount equivalent to the plaintiff's award for back pay and fringe benefits; that is, a finding of willfulness results in doubling the damages. The jury found, in response to a specific interrogatory, that Kaiser's violation of the ADEA was "willful."

Subsequent to the jury verdict, the Supreme Court, in *Trans World Airlines, Inc. v. Thurston,* — U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), adopted a stringent standard of "willfulness." The Court rejected a standard that a violation of the ADEA was willful if the employer simply knew of the applicability of the ADEA; the Court found that such a standard "would result in an award of double damages in almost every case." A violation of the ADEA may be deemed "willful" only if "the employer ... knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA."

But in this case the issue of willfulness was submitted to the jury under an instruction that willfulness is proved if the decision to terminate plaintiff was voluntary and not accidental, mistaken or inadvertent or made with a reckless disregard for its consequences. This instruction was given

in accordance with the decision of the Court of Appeals in *Wehr v. Burroughs Corp.*, 619 F.2d 276, 283 (3d Cir.1980).

This charge on willfulness was not only incorrect but prejudicial to defendant. Moreover, the evidence presented at trial was insufficient to submit the issue of "willfulness" to the jury as willfulness has now been defined by the Supreme Court. Even if we view the evidence and all inferences from the evidence in favor of plaintiff as we are required to do because of the verdict in his favor, there is insufficient evidence to support a verdict that Kaiser intended to violate the ADEA, knew it was doing so, or recklessly disregarded its obligation under the discrimination laws.

Plaintiff has conceded that economic necessity required Kaiser to retain only four of its six Division salesmen; the two discharged were the oldest. Plaintiff has convinced a jury that his immediate supervisor selected him because of his age. But the issue was an extremely close one; the evidence was all circumstantial. It is undisputed that Kaiser had a member of management designated to review discharges where violation of the Act might be implicated and at the level of highest corporate management it was determined, now as it turns out erroneously, that there would be no violation of ADEA in dismissing the plaintiff. No liquidated damages can be awarded in this case.[1]

### PREJUDGMENT INTEREST

Under § 626(b) of the ADEA, the court is empowered to grant "such legal or equitable relief as may be appropriate." Such relief may include an award of prejudgment interest at the court's discretion. *See Kelly v. American Standard, Inc.*, 640 F.2d 974, 982–983 (9th Cir.1981); *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665

F.2d at 162. However, it is generally accepted that the ADEA does not permit a successful plaintiff to obtain prejudgment interest in addition to liquidated damages. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 715, 65 S.Ct. 895, 906, 89 L.Ed. 1296 (1945).

> [L]iquidated damages under the ADEA, like prejudgment interest, are intended to provide compensation for losses that cannot be calculated with certainty, such as the value attributable to the loss of use of unpaid wages after an employee has been unlawfully discharged. Accordingly, in order to prevent double recovery, successful plaintiffs are not entitled under the ADEA, as well as under the FLSA, to obtain both liquidated damages and prejudgment interest.

*Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093 (8th Cir.1982).

Because the court has determined that an award of liquidated damages is not appropriate in this case, prejudgment interest will be awarded on back pay, medical expenses and automobile cost reimbursement. Prejudgment interest is not awarded on the amounts for profit sharing or pension benefits; these amounts would not have been payable until retirement.

The parties agreed that if prejudgment interest were awarded, the appropriate rate was in the discretion of the court. Plaintiff suggested that interest be calculated at 11% but introduced no evidence at trial showing that he could have invested money at that rate. The court in its discretion determines that an eight percent interest rate is adequate. Therefore, plaintiff is awarded interest on back pay, medical expenses and automobile costs, totalling $94,069.07 from November, 1981 to December, 1984. At eight percent simple interest, the interest on this amount is $12,258.34.

---

1. The parties have disagreed on whether as a result of the incorrect jury charge there should be a new trial on the issue of willfulness only. If the determination that there was insufficient evidence to go to the jury is incorrect, then a new trial on both liability and willfulness would be granted because the issues are so inextricably intertwined that severance would be inappropriate. The issue of whether violation of the statute occurred at all was a close one. Without complete development of the facts and circumstances, a jury, having been informed as a matter of law that there had been a violation of the ADEA, could not fairly determine the issue of "willfulness."

## FINAL JUDGMENT

AND NOW, this 21st day of February, 1984, for the reasons set forth in the foregoing Memorandum, it is ORDERED that

JUDGMENT on damages is entered in favor of plaintiff Carl F. Berndt and against defendant Kaiser Aluminum & Chemical Sales, Inc. in the following amounts:

| | |
|---|---:|
| Back Pay (Lost earnings less earnings from other employment) | $ 88,864.50 |
| Pension Benefits | 16,543.00 |
| Profit Sharing | 3,637.54 |
| Blue Cross/Blue Shield | 1,752.00 |
| Medical Expenses | 416.00 |
| Automobile | 3,036.57 |
| Future Lost Wages | 13,374.00 |
| Prejudgment Interest | 12,258.34 |
| TOTAL | $ 139,881.95 |

This amount is entered as a FINAL JUDGMENT.