**Donald J. KOSSMAN and Warren Jodar, Plaintiffs-Appellants,**

v.

**CALUMET COUNTY, Defendant-Appellee.**

No. 85–1517.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 18, 1986.

Decided Sept. 10, 1986.

Robert W. Lutz, Derek McDermott, Bonk, Lutz, Burnett & McDermott, Chilton, Wis., Susan Elizabeth Rees, E.E.O.C. Washington, D.C., for plaintiffs-appellants.

David Leo Uelmen, Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, Milwaukee, Wis., for defendant-appellee.

Before COFFEY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.[*]

COFFEY, Circuit Judge.

In this case, the district court held that the defendant Calumet County violated the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.* The plaintiffs-appellants, Donald J. Kossman and Warren Jodar, appeal the decision of the district court denying an award of liquidated damages pursuant to 29 U.S.C. § 626(b) as well as the district court's computation of their backpay award. We reverse and remand.

## I

Donald Kossman was born on June 28, 1925, and began working as a deputy sheriff for Calumet County, Wisconsin in 1957. After Kossman reached the age of 55, Calumet County terminated his employment as a Sergeant-Inspector pursuant to the County's mandatory retirement policy.

Prior to retirement, Kossman received a letter dated May 28, 1980 from William Broehm, Calumet County Sheriff, inquiring of Kossman whether he intended to request an extension of the normal Wisconsin officer's retirement age of 55 years under the Retirement Fund. On June 26, 1980, Broehm advised Kossman that his employment would be extended six months while the County examined the question of whether mandatory retirement at age 55 was legal. On December 31, 1980, the County retired Kossman.

On November 1, 1979 the Attorney General of the State of Wisconsin issued an opinion letter [1] to all state agencies stating that the requirements of the Wisconsin Retirement Fund concerning the 55 year age limit for protective services employees could no longer be used to justify the mandatory retirement of an employee protected by the ADEA.[2] The letter pointed out that before the passage of the 1978 amendments to the ADEA an employer could lawfully retire an employee pursuant to a bona fide employee benefit plan. The letter specifically referred to a 1974 Wisconsin Attorney General's opinion letter stating that compulsory retirement at age 55 was legal for participants in the Wisconsin Retirement Fund employed in protective service occupations.

The letter also went on to state that an employee could not be retired prior to age 70 unless a younger age was a bona fide occupational qualification for that particular job. It emphasized that each state agency should consider pertinent medical evidence relating to the aging process, the ability of medical tests to distinguish functional from chronological age, and statistical evidence concerning accident rates of older employees in order that they might determine whether this evidence justifies a required mandatory retirement age below age 70. On appeal, Calumet County officials do not deny that they received and considered the Attorney General's opinion

---

[*] The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. In Wisconsin, the Attorney General issues an opinion letter when a state agency requests an opinion. The opinion letter is then circulated to all state governmental agencies.

2. Individuals between the ages of 40 and 70 are covered by the ADEA. 29 U.S.C. § 631(a).

letter of November 1, 1979, barring retirement at age 55, prior to making their decision to retire Kossman.

Section 41.02(23) of the Wisconsin Retirement Fund Act set age 55 as the proper retirement age for deputy sheriffs. Wisc. Stats. § 41.02(23) (1980). Effective in May, 1980, section 41.11(a) of the Wisconsin Retirement Fund Act was amended to provide that county employees "may be retired by the employer after the employee attains his or her normal retirement [age] ... except as prohibited by federal law." Wisc.Stats. § 41.11(a) (1980). Calumet County officials were also aware of this amendment to the Wisconsin statute at the time they retired Kossman.

On December 22, 1980, Gary Frey, a Specialist with the federal Equal Employment Opportunity Commission, informed James Ungrodt, Calumet County Corporation Counsel, that in his opinion the mandatory retirement of Kossman was illegal and reminded Ungrodt of the Wisconsin Attorney General's opinion letter of November 1, 1979.

Appellant Warren Jodar was born on September 21, 1926. He began working for Calumet County in 1958 as a deputy sheriff. On October 1, 1981, the County terminated Jodar's employment pursuant to the County's 55 year mandatory retirement policy for protective service employees. Jodar and Kossman each filed suit against Calumet County, alleging that the County violated the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.* Their cases were consolidated for trial.

At trial, the district court found the County liable under the ADEA, 600 F.Supp. 175, 176 (1985), but refused to award liquidated damages to either Kossman or Jodar. 600 F.Supp. at 177–78. In denying the appellant's request for liquidated damages, the district court stated:

"In addition to a finding of liability in this case, the plaintiffs urge that I find the actions of the county to be 'wilful' under the Act. [ADEA, 29 U.S.C. § 621 *et seq.*]. A finding of 'wilfulness' entitles the plaintiffs to liquidated, or double, damages. Considering the murky area of the law in which the issue in this case is raised and the obvious unfairness inherent in the decision of Congress to exempt federal personnel in the law enforcement area from the requirements of the Act, a finding of wilfulness in this case is out of the question."

600 F.Supp. 175, 177–78.

In their respective complaints, and at trial, Kossman and Jodar alleged that the County willfully violated the ADEA. In its brief, the County asserts that the "constitutionality of ADEA's application to county law enforcement officers was still very much in doubt at the time the appellants retired." Appellee's Brief at 18. In particular, the County states that its officials believed that the Tenth Amendment of the United States Constitution barred the application of the ADEA to state governments. To support this position, the County cited *EEOC v. Wyoming*, 514 F.Supp. 595 (D.Wyo.1981), concluding that the application of the ADEA to Wyoming state game wardens was contrary to the Tenth Amendment and the Supreme Court's decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The Supreme Court subsequently reversed *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983).

## II

Under 29 U.S.C. § 626(b), Kossman and Jodar are entitled to liquidated damages if they can establish that the County willfully violated the ADEA. In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court stated that "a violation of the [ADEA] was 'willful' if 'the employer ... knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" 105 S.Ct. at 624. The district court concluded that the defendant's actions were not willful after finding that:

"A finding of 'wilfulness' entitles the plaintiffs to liquidated, or double, dam-

ages. Considering the murky area of the law in which the issue in this case is raised and the obvious unfairness inherent in the decision of Congress to exempt federal personnel in the law enforcement area from the requirements of the Act, a finding of wilfulness in this case is out of the question."

600 F.Supp. 175, 177–78. The language of the district court's opinion makes clear that the district court did not apply the proper standard and failed to consider whether the County "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." 105 S.Ct. at 624. The district court in its opinion concluded that "a finding of willfulness in this case is out of the question" since the issue raised by the plaintiff's suits involved a "murky area of the law" and because of the "obvious unfairness inherent in the decision of Congress to exempt federal personnel in the law enforcement area from the requirements of the Act." The "unfairness" in exempting federal personnel was an inappropriate consideration in determining whether the defendant acted willfully.

Proper application of the statute requires that the district court consider whether the county "knew or showed reckless disregard" as to the impropriety of its conduct toward the plaintiffs. Thus, the district court's determination of a lack of willfulness on the part of the defendants is based on its application of an improper standard of review.

The Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, et seq., makes it unlawful for an employer "to discharge any individual ... because of such individual's age," [3] and expressly incorporates the remedies and procedures of the Fair Labor Standards Act ("FLSA"). Section 626(b) of the ADEA, 29 U.S.C. § 626(b), states that its provisions "shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 and 217 of this title...." [4] Pursuant to the FLSA statutes cited in the ADEA, an employer who violates the ADEA is liable for back wages and benefits and can be liable for "an additional equal amount as liquidated damages." [5] Despite the express incorpo-

**3.** 29 U.S.C. § 623(a) provides:

(a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

**4.** 29 U.S.C. § 626(b) states:

(b) The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of

this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid overtime compensation under this section. Before instituting any action under this section, the Equal Employment Opportunity Commission shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion.

See also *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985); *Lorillard v. Pons,* 434 U.S. 575, 579, 98 S.Ct. 866, 869, 55 L.Ed.2d 40 (1978).

**5.** 29 U.S.C. § 216(b) provides:

(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime com-

ration of the remedial provision of the FLSA into the ADEA, the statutes are not identical. Section 216(b) of the FLSA, which makes the award of liquidated damages mandatory, is limited in the ADEA, 29 U.S.C. § 626(b), by a proviso stating that a prevailing plaintiff is entitled to double damages "only in cases of willful violations." 29 U.S.C. § 626(b).

Before determining whether a plaintiff who prevailed in an ADEA action is entitled to liquidated damages, the court must initially determine whether or not the defendant willfully violated the provisions of the ADEA. Admittedly, the courts ofttimes have a difficult problem in determining what precisely constitutes willful conduct. *See Wehr v. Burroughs Corporation*, 619 F.2d 276, 280 (3d Cir.1980) (discussion of the proper definition of willful in the ADEA). This court does not face such uncertainty for we have spoken on this issue in at least three prior decisions. In *Syvock v. Milwaukee Boiler Manufacturing Co., Inc.*, 665 F.2d 149 (7th Cir.1981), we stated:

> "We think that a finding of willfulness should lie only if there is some showing as to the defendant's knowledge of the illegality of his actions. We hold that in order to prove willfulness under 29 U.S.C. § 626(b) (1976), a plaintiff must show that the defendant's actions were knowing and voluntary and that he knew

or reasonably should have known that those actions violated the ADEA." *Id.* at 155–56. Again, in *Orzel v. City of Wauwatosa Fire Department*, 697 F.2d 743, 758 (7th Cir.1983), we expressly approved of the holding in *Syvock*. *Id.* at 758. Finally, in *Heiar v. Crawford County, Wisconsin*, 746 F.2d 1190 (7th Cir.1984), we said that a "violation was not 'willful' just because [the defendant] ... knew it was forcing the plaintiffs to retire before the age of 70." The court continued to state that "[t]he plaintiffs must show that the County should have known it was violating the Act." *Id.* at 1201.

In addition, the United States Supreme Court has recently spoken on the issue of willful conduct under the ADEA in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), and we hold that the standard the Supreme Court applied in that case must be used here. In *Thurston*, the Court stated:

> "The court below stated that a violation of the act was 'willful' if 'the employer ... knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' Given the legislative history of the liquidated damages provision, we think the 'reckless disregard' standard is reasonable."

105 S.Ct. at 624 (citation omitted).

The Court went on to state that "[t]he definition of 'willful' adopted [here] ... is

---

pensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in

the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

consistent with the manner in which this Court has interpreted the term in other criminal and civil statutes." *Id.* The Supreme Court also stated that "[t]he legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." *Id.* The Court also noted Congress believed that liquidated damages would " 'furnish an effective deterrent to willful violations [of the ADEA].' " *Id.* (quoting remarks of Senator Javits).

The defendant argues that a trial court's finding of no willful violation of the ADEA is subject to a clearly erroneous standard on review as a finding of fact. Appellee's Brief at 9. This argument is irrelevant because the district court applied an improper standard in determining whether or not the defendant Calumet County acted willfully.

■ The defendant also argues that it did not act willfully, under the standards the Supreme Court applied in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). The record demonstrates that the County acted willfully in dismissing Kossman and Jodar. Gary Frey of the federal Equal Employment Opportunity Commission informed James Ungrodt, Calumet County Corporation Counsel, that in his opinion the mandatory retirement of Kossman was illegal. The County committee responsible for the employment of protective service employees met and discussed the 1979 Attorney General's letter and Frey's letter prior to retiring Kossman and Jodar. Thus, it is more than evident that the County had knowledge of the Attorney General's opinion letter warning them of the possible illegality of its action and acted in complete disregard thereof. The County argues that it acted in good faith stating that it relied on *EEOC v. Wyoming*, 514 F.Supp. 595 (D.Wyo.1981), *rev'd*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). We fail to understand how the County could have relied on this case in its Kossman retirement decision as Kossman retired in December of 1980, and the *EEOC v. Wyoming* case

was not decided until some five months thereafter, May of 1981. The County also argues that it relied on this court's decision in *EEOC v. City of Janesville*, 630 F.2d 1254 (7th Cir.1980) to support the legality of the County's actions. In *EEOC v. City of Janesville*, the City of Janesville appealed a preliminary injunction in a case involving the involuntary retirement of the city's police chief. The court of appeals in reversing the district court did not decide that the City of Janesville's actions were lawful but only that the district court should not have issued a preliminary injunction. The court in fact stated that "[w]e do not ... express any views on the merits of the substantive claims asserted by the respective parties to this litigation." *Id.* at 1259. In light of the above discussion, we hold that the County willfully violated the ADEA in retiring Kossman and Jodar. Because the County willfully violated the ADEA in retiring Kossman and Jodar, an award of liquidated damages is appropriate in this case.

■ An award of prejudgment interest lies within the discretion of the trial court. *Syvock v. Milwaukee Boiler Manufacturing*, 665 F.2d 149, 162 (7th Cir.1981). We reject the County's position at oral argument that the district court's award of prejudgment interest to Kossman and Jodar barred the award of liquidated damages in this case. In *Gibson v. Mohawk Rubber Company*, 695 F.2d 1093 (8th Cir.1982), the court stated:

"[L]iquidated damages under the ADEA, like prejudgment interest, are intended to provide compensation for losses that cannot be calculated with certainty, such as the value attributable to the loss of use of unpaid wages after an employee has been unlawfully discharged. Accordingly, in order to prevent double recovery, successful plaintiffs are not entitled under the ADEA, as well as under the FLSA, to obtain both liquidated damages and prejudgment interest."

*Id.* at 1102. *See also Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 604 F.Supp. 962, 967 (E.D.Pa.1985); *Spagnuolo*

*v. Whirlpool Corp.*, 641 F.2d 1109, 1114 (4th Cir.1981). Since *Gibson* precludes an award of both liquidated damages and prejudgment interest, and because we have determined that an award of liquidated damages is appropriate in this case, we vacate the district court's award of prejudgment interest. Were we not to vacate the prejudgment interest award the plaintiffs would receive compensation beyond that contemplated by Congress when it authorized awards of liquidated damages under § 626.

### III

Kossman and Jodar also argue that the district court erred when it failed to include in its award of backpay, health and life insurance benefits, overtime payments, clothing allowances, and employer contributions to the Wisconsin Retirement Fund. The goal of the ADEA is to restore the victim of discrimination to the economic position which he would have occupied but for the employer's unlawful conduct. *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 604 F.Supp. 962, 964 (E.D.Pa. 1985) (stating the goal of the ADEA); *Krodel v. Young*, 576 F.Supp. 390, 394 (D.D.C. 1983) (stating that the goal of the ADEA is to make the plaintiff whole again). This goal is an appropriate consideration in determining whether or not to order back pay. The defendant correctly points out that backpay awards under the ADEA fall within the discretion of the trial court and should not be disturbed absent an abuse of discretion. In *Syvock v. Milwaukee Boiler Manufacturing Co., Inc.*, 665 F.2d 149 (7th Cir.1981), we noted that "[a]n award of backpay is within the district court judge's discretion." *Id.* at 160. However, in this case the trial court failed to consider whether the backpay award should include overtime benefits and health and life insurance benefits.

■ The trial court failed to consider what Kossman and Jodar would have received had they been entitled to overtime pay in its determination of the backpay awards. (Op. & Ord. 3/5/85, pp. 1–2). In

*Syvock v. Milwaukee Boiler Manufacturing Co., Inc.*, 665 F.2d 149, 160–61 (1981), we allowed overtime benefits to be included as an element of the plaintiff's backpay award. Accordingly, the trial court should have considered whether or not Kossman and/or Jodar were entitled to receive overtime benefits had they continued their employment with the County and the amount of any overtime benefits they would have received, if any.

■ Kossman and Jodar also claim on appeal that they are entitled to recover the amounts that would have been expended to continue their health and life insurance coverage had they not been forced to retire. In *Spagnuolo v. Whirlpool Corporation*, 550 F.Supp. 432, 433 (W.D.N.C.1982), the court declined to award insurance premiums as an element of backpay because the plaintiff did not secure alternative coverage. In *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 604 F.Supp. 962, 965 (E.D.Pa.1985), the court granted premiums as an element of a backpay award because plaintiff did purchase alternative coverage. In *Buchholz v. Symons Manufacturing Co.*, 445 F.Supp. 706, 713 (E.D.Wis.1978), the court refused to include the cost of health insurance coverage as an element of backpay because the plaintiff admitted at trial that he failed to secure other health insurance coverage after his discharge. In *Syvock*, 665 F.2d 149, we approved of the trial court's failure to award the cost of insurance as an element of backpay where the victim of discrimination does not secure alternative coverage. *Id.* at 161.

The primary goal of the backpay award is to make a victim of age discrimination whole. *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 604 F.Supp. 962, 964 (E.D.Pa.1985). Including the cost of insurance coverage in a backpay award when the victim of discrimination fails to secure alternative coverage allows the victim to recover an unwarranted windfall unless he or she can demonstrate that they were unable to secure coverage and had a medical expense. As the preceding cases demonstrate, Kossman and Jodar must estab-

lish that in fact they incurred expenses in securing alternative insurance coverage or incurred medical expenses that would have been covered under the County's insurance program had they not been terminated in order that they might recover the cost of the insurance benefits or be reimbursed for any proper medical expenses incurred. Thus, the trial court should consider whether Kossman and Jodar after their retirement purchased insurance coverage the County would have purchased for them. The court should include those expenditures in the backpay award that Jodar and Kossman incurred if in fact they did purchase alternative coverage or in lieu thereof incurred medical expenses ordinarily covered under the County's policy.

Kossman and Jodar also contend on appeal that they were entitled to receive the amount the County would have paid as a clothing allowance in their backpay award. The trial court's action was proper in refusing to include in the backpay award the clothing allowance Kossman and Jodar would have received had they not been terminated. Common sense dictates that Kossman and Jodar certainly had no need for deputy sheriff's uniforms during the period they were not employed as deputy sheriffs. The inclusion of the clothing allowance in the backpay award, therefore, would not be in accord with the underlying policy of the ADEA, to make the victim of age discrimination whole. In *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 604 F.Supp. 962, 965 (E.D.Pa.1985), the trial court refused to award a victim of age discrimination the value of his expense account because he did not incur work-related expenses while unemployed.

Finally, Kossman and Jodar assert on appeal that they are entitled to the amounts which the County would have contributed on their behalf to the Wisconsin Retirement Fund had they not been retired. The trial court ordered the County to repay the retirement fund the amounts necessary to place Kossman and Jodar in the same position they would have been in but for their involuntary retirement. Op. & Ord.

3/5/85, pp. 3–4. The trial court award is adequate with respect to the Wisconsin Retirement Fund because it places Kossman and Jodar in the same position they would have been in but for their involuntary retirement.

### IV

From our review of the record, we hold that Calumet County willfully violated the provisions of the ADEA. Accordingly, Kossman and Jodar are entitled to liquidated damages in the amount of twice their actual damages. The district court's award of prejudgment interest is vacated. We also hold that the trial court incorrectly failed to consider whether the value of overtime benefits and insurance benefits should have been included as elements of the court's backpay award. Accordingly, we remand for consideration of whether the value of these benefits should be included in the backpay award. We reverse in part and remand in part for further proceedings consistent with this opinion.