**Michael V. ZAMPINO, Plaintiff,**

v.

**SUPERMARKETS GENERAL CORPORATION, Defendant.**

**No. CA: 90–7234.**

United States District Court, E.D. Pennsylvania.

April 21, 1993.

Joel Sansone, Kelly Scanlon, of Sansone & Associates, Pittsburgh, PA, for plaintiff.

Michael Kraemer, of White & Williams, Philadelphia, PA, for defendant.

## MEMORANDUM & ORDER

HUYETT, District Judge.

On February 4, 1993, a jury found defendant in this action liable for age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") after a nine day trial. In answering the Special Interrogatories submitted to them by the Court, the jury calculated an award of $35,000.00 for back pay and $227,-000.00 for front pay in the event that the Court found reinstatement not feasible. Hence, the Court must now determine whether to award reinstatement or front pay to compensate plaintiff for his future damages.

For the reasons stated in the accompanying memorandum, I find that the reinstatement of plaintiff Michael Zampino to his former position with defendant Supermarkets General Corporation is not feasible. I shall therefore amend the civil judgment order entered in this action on February 5,

1993 to include an award of $227,000.00 in future damages.

## I. INTRODUCTION

Plaintiff Michael Zampino has been employed by defendant Supermarkets General Corporation from approximately January, 1964 through the present in various positions. In June of 1987, plaintiff was informed that he would be demoted from the position of Product Manager of the Dairy and Deli (or "Appy") Departments in the Southern Division to the position of Assistant Store Manager, which he holds to this day. Plaintiff's salary was not reduced when he was demoted to Assistant Store Manager, but he was told that he would have to attain a performance rating of two or above in that position to maintain his salary. Because he did not achieve this rating, his salary was reduced on February 4, 1990 and then again on May 6, 1990. At the time of these reductions, plaintiff was fifty years old. Plaintiff's demotion ultimately resulted in a reduction in his salary and job level from L–26 to L–17.

After hearing nine days of testimony addressing the circumstances surrounding plaintiff's demotion and his employment record before and after that demotion, the jury found that age was a determining factor in defendant Supermarkets General Corporation's decisions regarding plaintiff's employment status in violation of ADEA.[1] The jury found that plaintiff suffered losses as a result of this violation amounting to $35,000.00 in past damages. The jury also found that plaintiff's future damages, or front pay, would amount to $227,000.00 if plaintiff did not continue his employment with defendant, a sum which would be awarded only if the Court finds that reinstatement is not feasible.

Defendant argues that reinstatement is the preferred remedy in age discrimination cases absent "unconscionable difficulties," *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393 (3d Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984), and is the proper remedy in this case. Defendant contends that no credible evidence adduced at trial supports the conclusion that reinstatement is not feasible in this case.[2] Plaintiff claims that reinstatement is not feasible because a suitable and comparable position no longer exists with defendant and even if it did, the level of hostility between plaintiff and defendant is such that reinstatement would merely promote continued disharmony.

## II. DISCUSSION

### A. Legal Standards

Although a combination of back pay and reinstatement is the preferred remedy in ADEA cases, front pay is proper when reinstatement is not feasible. *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). Reinstatement may not be feasible if there is no position available at the time of judgment or if the relationship between the parties has been so damaged by animosity that reinstatement is impracticable. *Id.; Whittlesey v. Union Carbide Corp.*, 742 F.2d 724 (2d Cir.1984). Since reinstatement is an equitable remedy, it is the district court that should decide whether reinstatement is feasible. *Maxfield*, 766 F.2d at 796.

Although the exact position from which an ADEA plaintiff has been unlawfully removed need not be available to enable proper reinstatement, a substantially comparable position must be available. *See Sinclair v. Ins. Co. of North America*, 609 F.Supp. 397 (E.D.Pa.1984), *aff'd*, 782 F.2d 1029 (3d Cir.1986). Further, even if a comparable position exists, reinstatement is not feasible where continued disharmony exists between the parties which would require the policing of an ongoing relationship. *Goss v.*

---

1. The jury also found that defendant had not committed a definitive act of discrimination against plaintiff with the inevitable consequence of the later salary reductions at any time before October 27, 1989, thereby defeating the statute of limitations defense advanced by defendant.

2. Defendant also contends that an award of front pay would be improper because prior to trial in the Pretrial Order plaintiff requested reinstatement only. I decline to lend such importance to plaintiff's request for relief in the Pretrial Order, for evidence developed at trial supports a finding that reinstatement is not feasible, regardless of what relief plaintiff originally requested.

*Exxon Office Systems Co.,* 747 F.2d 885 (3d Cir.1984). Where the record reflects hostility and animosity between the parties which would obviously breed an unsatisfactory employment atmosphere, reinstatement would not be an adequate remedy to make plaintiff whole as envisioned by ADEA. *Maxfield,* 766 F.2d at 796. When reinstatement proves to be an inadequate remedy, front pay should be granted. *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 604 F.Supp. 962, 966 (E.D.Pa.1985)

■ Therefore, the two questions I must answer are (1) does the evidence show that the position from which plaintiff was unlawfully demoted, or a comparable position, currently exist, and (2) if so, is reinstatement to that position precluded by the level of hostility and animosity between the parties? Pursuant to my Order of February 5, 1993, the parties have briefed these issues and submitted additional evidence in the form of affidavits to supplement the trial record.

### B. *Availability of a Comparable Position*

Defendant takes the position that it can reinstate plaintiff to the position of Product Manager. In support of this position, defendant offers the affidavit of Richard McGinley, Director of Associate Relations of the Southern Division of Pathmark. In his affidavit, Mr. McGinley states that the position of Product Manager for Dairy and Frozen Food in the Southern Division is available as a result of a transfer of a current Product Manager. (McGinley Aff. at 1.) Mr. McGinley also avers that this open position is "essentially the same position" as that which plaintiff held prior to his demotion in 1987. (*Id.* at 2.)

Plaintiff vigorously disputes defendant's contention that the position now offered by defendant is in any way comparable to the position he held in 1987. Plaintiff explains that his prior position was Product Manager of Dairy and Deli (or Appy), a position that no longer exists. According to plaintiff, the position now offered by defendant is radically different because it entails management of the frozen foods department, a subcategory of the grocery area for which plaintiff is completely unqualified. In support of this

position, plaintiff submits an affidavit in which he avers that he has no experience and is unqualified for a position in frozen foods, citing the following shortcomings in his background for this position: (1) a lack of knowledge of the appropriate outside vendors; (2) a lack of training and experience in the merchandising and marketing techniques applicable to frozen foods; and (3) a lack of knowledge of the different contact persons at headquarters. (Zampino Aff. at 2–4.)

The trial record contains little helpful testimony regarding the current availability of a suitable position for plaintiff. The record shows only that in the reorganization of 1987, the number of Product Managers for Dairy and Appy was reduced from two to one, leaving only Ed Whitby in that position. (Bernard Kenny Test. 1/28/93, Tr. at 10.) To overcome this shortcoming, defense witness Richard McGinley has supplemented his trial testimony with an affidavit which purports to show that a suitable position exists for plaintiff. However, Mr. McGinley's affidavit does not refute the fact that plaintiff's prior position, Product Manager for Dairy and Appy, no longer exists. Instead, his testimony merely sets forth his opinion that a different position, that of Product Manager for Dairy and Frozen Foods, is essentially the same as plaintiff's prior position.

Plaintiff has countered Mr. McGinley's opinion with convincing and specific examples of the important differences between the two positions, and has demonstrated that he does not have the expertise required to hold the position of Product Manager of Frozen Foods. The trial record supports this position. According to the trial record, plaintiff started with Pathmark in 1964 as a clerk in the deli department and was soon promoted to deli manager. (Zampino Test. 1/25/93, Tr. at 72–74.) He next became an Assistant Manager in charge of perishables (which would include dairy and deli, but not frozen food, which is a category of non-perishables). (Zampino Test. 1/25/93, Tr. at 75–77.) He then became a Dairy–Deli Specialist for the Southern Division and eventually became a Product Manager for Dairy and Deli, a position he held for seventeen years. (Zampino Test. 1/25/93, Tr. at 84–85.) Given the ex-

clusive focus of plaintiff's entire career with defendant on dairy and deli and the amount of expertise his position of Product Manager for Dairy and Appy entailed, it is difficult to imagine that the different Product Manager positions are as fungible as defendant would have us believe.

■ Recognizing that plaintiff's qualifications are lacking in the area of frozen foods, defendant offers that it is "ready and willing" to retrain plaintiff to enable him to perform the frozen foods aspect of his new position. Defendant's Reply Brief at 7. Alternatively, defendant states that it is willing to "restructure" in some unspecified manner the product manager assignments so as to avoid placing plaintiff in charge of frozen foods or other non-perishables. Defendant's Reply Brief at 7–8. However, as defendant correctly notes, the standard for determining the feasibility of reinstatement is whether a position exists that is "comparable" to plaintiff's prior position. *Sinclair v. Ins. Co. of North America*, 609 F.Supp. 397 (E.D.Pa.1984). The fact that plaintiff would have to be retrained to gain the expertise necessary to hold the position defendant is offering lends strong support to the argument that the two positions are not "essentially the same" as contended by defendant. Further, vague assertions by defendant's counsel that the Product Manager assignments could somehow be restructured so as to give plaintiff a position that is equivalent to his prior position do not suffice to establish that a comparable position currently exists to which plaintiff can be reinstated.

### C. *Hostility and Animosity*

Even if defendant did convince this Court that a comparable position existed to which plaintiff could be reinstated, reinstatement would still be improper because of the level of hostility demonstrated in this action. Defendant insists that the record contains no meaningful evidence of hostility and, in fact, the record shows that every witness at trial described their relationship with plaintiff as "anywhere from businesslike to personally friendly." Defendant's Reply Brief at 4. Further, defendant suggests that plaintiff's continued employment with defendant to this day should somehow preclude his claims of hostility and animosity.

First, the fact that plaintiff is still employed by defendant as an Assistant Store Manager in the Shillington Store has no bearing on his potential reinstatement as a Product Manager, a position that would entail a change in location, salary, prestige and colleagues. Moreover, plaintiff has filed two affidavits since trial which detail his perception that even in his present position, an atmosphere of hostility and mistrust pervades. *See*, Zampino Aff. of February 24, 1993 at 7–8; Zampino Aff. of April 5, 1993. Clearly, plaintiff's continued employment with defendant as an Assistant Manager does not weaken his claim that continued animosity would interfere with his employment as a Product Manager.

Second, contrary to defendant's impression that the trial record contains no "meaningful" evidence of hostility, I find that the trial record reflects an employment relationship marred by mistrust and subtle animosity.

Specific examples of this include the testimony of defense witness Jeff Lebo, a General Manager under whom plaintiff served as an Assistant Manager. Mr. Lebo testified that when he told his supervisor Bruce Johnson, an Area Supervisor, that plaintiff would be receiving a good performance rating, Mr. Johnson gave him "one of his looks and said we'll talk about it later." (Tran. at 97, Testimony of Jeff Lebo.) Although Mr. Lebo later tried recant this testimony, the fact that he felt compelled to mention this "look" and appeared uncomfortable when trying to explain its meaning raises serious questions about plaintiff's employment relationship with Mr. Johnson.

Similarly, plaintiff's witness Jay Schwambach, a dairy and produce manager who worked under plaintiff when plaintiff was the Assistant Store Manager of the Reading Store, gave testimony that clearly supports plaintiff's perception of hostility and animosity toward him from defendant. Mr. Schwambach testified that Charlie Tirney, the General Store Manager under whom both Schwambach and plaintiff worked, "used to make remarks, sly remarks ... like

off-color remarks" about plaintiff.[3] (Schwambach Test. 1/26/93, Tr. at 155.)

Finally, there was much testimony at trial surrounding two incidents which plaintiff perceived to reflect the company's animosity toward him. First, plaintiff believed that in a performance review for the period from March of 1991 to November of 1991 his General Manager, Dick Francis, accused him of retail theft by connecting him with a minor employee's theft of cigarettes. (Zampino Test. 1/26/93, Tr. at 22.) Plaintiff also believed that Mr. Francis had once tampered with the time cards in one of plaintiff's departments to charge extra time in order to make him look bad. (Zampino Test. 1/26/93, Tr. at 12.) Although numerous defense witnesses testified that no official accusation of theft had been made or insinuated and that no malicious tampering occurred, the fact remains that these events did occur and did cause plaintiff and defendant to most strenuously disagree, thereby planting the seeds of mistrust and hostility.

The preceding examples illustrate the atmosphere of the subtle friction that pervaded the trial. I find that taken as a whole, the record in this action clearly reflects an unsatisfactory employment relationship between plaintiff and defendant, one characterized by distrust, hostility and resentment. I therefore find that reinstatement would not be an adequate remedy in this action.

## III. CONCLUSION

For the reasons stated above, I find that reinstatement is not an appropriate remedy this action. I shall therefore amend the civil judgment order of February 5, 1993 to include an award of future damages, as calculated by the jury.

An appropriate order follows.

## ORDER

In consideration of the parties' briefs regarding relief and for the reasons stated in the accompanying memorandum, the civil

judgment order dated February 5, 1993 is hereby amended to read as follows:

IT IS ORDERED that Judgment be and the same is hereby entered in favor of plaintiff and against defendant in the amount of $262,000.00.

IT IS SO ORDERED.

---

**3.** On cross-examination, Schwambach explained that by "off-color" he did not mean vulgar or indecent. Instead, his testimony shows that he

used this word to mean "improper." (Tran. at 166, Testimony of J. Schwambach.)